UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FOR ONLINE PUBLICATION ONLY

---------------------------------------------------------------- X
DAVINDER SINGH,

                Plaintiff,

   - against -

RALPH C. MARESCO,

                Defendant.
---------------------------------------------------------------- X

MEMORANDUM
AND ORDER

04-CV-1439 (JG) (CLP)

A P P E A R A N C E S:

    BARRY SISKIN, ESQ.
        225 West 34th Street, Suite 200
        New York, New York 10122
        Attorney for Plaintiff

    DOWNING & PECK, P.C.
        5 Hanover Square, 20th Floor
        New York, New York 10007
    By:   John M. Downing, Jr.
        Attorneys for Defendants

JOHN GLEESON, United States District Judge:

        On September 20, 2002, on Second Avenue and East 4th Street in Manhattan, Beau Burtnick, the operator of a car owned by defendant Ralph Maresco, entered into a collision with the car of plaintiff Davinder Singh. On October 23, 2002, Singh, a citizen of New York, sued Maresco and Burtnick,[1] both citizens of New Jersey, alleging that Burtnick -- and by extension, Maresco -- negligently caused Singh to sustain severe and permanent injury. The action was filed in Supreme Court, New York County.

---

[1] On August 30, 2007, I adopted Judge Pollack's Report and Recommendation dated May 23, 2007 and dismissed the action against Burtnick for want of proper service.

Maresco filed a notice of removal on April 5, 2004. The defendant now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the ground that Persaud did not suffer a "serious injury" within the meaning of N.Y. Insurance Law § 5102(d). For the reasons set forth below, defendant's motion is granted.

FACTS

The following facts are either undisputed or are set forth in the light most favorable to Singh. On the night of September 20, 2002, Singh, a New York City cab driver, was driving his taxi southbound on Second Avenue. Singh Dep. 10. Hailed by a woman[2] standing on the corner of East Fourth Street and Second Avenue, Singh changed lanes in order to pick her up. *Id*. at 11. He came to a full-stop in the right-most lane to pick up the fare. *Id*. at 14. As the woman attempted to open the car door, the right rear end of Singh's car was hit from behind by the front left end of Maresco's vehicle damaging Singh's right rear bumper and break lights. *Id*. at 14-17. The police accident report described it as a "minor motor vehicle accident with little to no damage." Def.'s Mem. Ex. I.

Upon the impact, Singh felt a severe pain in his leg, and then felt pain throughout his body. Singh Dep. 17. The impact caused his kneecap to hit the corner of the door. *Id.* at 63. Fifteen to twenty minutes later, police arrived on the scene and an ambulance brought Singh to Beth Israel Medical Center. *Id.* at 25, 31. When he arrived at the hospital, Singh complained of pain in his leg, back, neck and face; his leg had not been bruised. *Id.* at 33, 63. According to the initial triage assessment at Beth Israel Medical Center, Singh's chief complaint was of lower back pain, with no mention of pain in or injury to his left leg from the accident. Def.'s Reply Br.

---

[2] There is some confusion in the deposition as to whether it was a woman or a man who had hailed the cab.

Ex. A.  Only when he was later examined by a physician did he complain of leg pain.  *Id*.  Singh stayed in the hospital overnight.

Singh had been injured before the September 2002 accident.  In March 2001, he was in a Jeep that was struck by a bus in India, and he suffered a fracture of his left leg.  Singh Dep. 45.  According to Singh, "he had undergone open reduction and internal fixation of [the] fracture in India.  Pl.'s Mem. Ex. A at 2.  When asked if he could access the medical records from the hospitals in India, Singh stated that the hospitals do not maintain medical reports and it would be impossible to retrieve any records years later.  Singh Dep. 45-48.  He was treated by doctors in India who placed an intramedullary rod in his left thigh and performed knee surgery on the same day.  *Id*. at 47; Def.'s Mem. Ex. J.

After his release from the hospital the day after the accident, Singh was referred to Dr. Andrew Rosen of Beth Israel for surgery for his leg.  Singh Dep. 33-34.  Singh was also treated by an orthopedic surgeon, Dr. Carr, to whom Singh was referred by his attorney.  Singh Dep. 35.  Dr. Carr treated his neck and back, assisted him in physical therapy, and prescribed medication.  *Id.* at 36.  Singh also visited Dr. Amato who helped him with physical therapy for about five to six months.  *Id.* at 39.  After the accident, Dr. Amato took an MRI of his neck and back.  *Id.* at 43.

Dr. Rosen treated Singh from September 27, 2002 through December 2007 for problems with his left leg.  Pl.'s Ex. A.  Rosen's x-rays revealed the femur fracture suffered in 2001, and demonstrated a pattern of nonunion.  Rosen stated that "it appears that . . . [the] September 20, 2002 accident disrupted a stable fibrous non-union supported by an intact intramedullary rod" and that "displacement of the patellar K-wires may have also been affected

by the second injury although without pre-injury x-rays it would be impossible to determine." Pl.'s Ex. A 2. On November 25, 2002, Singh underwent surgery for his leg.

Singh made conflicting statements in his deposition as to whether he worked after the accident. He testified that the day after the accident he went to work, and then he worked part-time (three to six hours a day) for the next three months. Def.'s Mem. Ex. G 41. He also testified that after the accident and after the surgery he could not work for two months, and then when he did start working, he could only work part-time. Singh Dep. 52, 65. About a year ago, Singh got into another car accident in Queens, but he was not injured. Still, he was taken to Jamaica Hospital for x-rays. *Id.* at 56-57.

Singh's surgery after the September 2002 accident at issue here included the removal of the rod, reaming of the femoral canal and placement of a new larger rod. The K-wire and wires in the knee were also removed. Pl.'s Ex. A. Rosen monitored Singh's progress over the next five years, and noted that days after the surgery, Singh's wound sites healed well and that he had initiated a course of physical therapy. By January 2003, Rosen found that Singh's knee was "improving." *Id.* By January 6, 2004, Rosen reported that Singh's thigh was "completely improved." *Id*. A recent x-ray taken on December 12, 2007 revealed that the femoral fracture had completely healed, and that the left knee showed mild patellofemoral joint narrowing. Pl. Ex. A. In his report, however, Rosen does not explain the significance of such joint narrowing.

As of the date of his deposition, March 9, 2005, Singh was working six days a week, between eight and ten hours a day. Singh Dep. 64. Defendant's doctor, Dr. Crane, examined Singh on September 5, 2006 and did not observe evidence to support Singh's claimed injury. Def.'s Mem. Ex. J.

DISCUSSION

A.  *The Summary Judgment Standard*

Under Rule 56 of the Federal Rules of Civil Procedure, the moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must demonstrate that no genuine issue exists as to any material fact. *Gallo v. Prudential Residential Servs. Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). For summary judgment purposes, a fact is "material" when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Accordingly, in determining whether an issue is genuine, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks and citation omitted).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted). The moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and

a grant of summary judgment is proper. *Gallo* at 1223-24. The nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita*, 475 U.S. at 586.

B.  *The "Serious Injury" Requirement*

Under New York law, a claimant cannot bring suit for a personal injury arising out of an automobile accident "except in the case of a serious injury." N.Y. Ins. Law § 5104(a). To qualify as a "serious injury," the claimed injury must involve one of the following: (1) death; (2) dismemberment; (3) significant disfigurement; (4) a fracture; (5) loss of a fetus; (6) permanent loss or use of a body organ, member, function or system; (7) permanent consequential limitation of use of a body organ or member; (8) significant limitation of use of a body function or system; or (9) a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment. N.Y. Ins. Law § 5102(d). In his complaint and in his papers in opposition to the motion, Singh appears to allege that he suffered a serious injury in all categories but (1), (2), and (5).

The no-fault law's threshold requirement of "serious injury" was intended "to weed out frivolous claims and limit recovery to significant injuries." *Dufel v. Green*, 84 N.Y.2d 795, 798 (1995). The New York Court of Appeals has accordingly "required objective proof of a plaintiff's injury in order to satisfy the statutory serious injury threshold; subjective complaints alone are not sufficient." *Toure v. O'Neal*, 98 N.Y.2d 345, 350 (2002) (citations omitted*); see also Licari v. Elliot*, 57 N.Y.2d 230, 236 (1982) (the purpose of the no-fault law is to reduce the

number of automobile personal injury accident cases litigated in the courts, and thereby help contain the no-fault insurance premium.).

In the summary judgment setting, New York law places on the defendant the initial burden of establishing a prima facie case that a plaintiff has not sustained any "serious injury." *See Gaddy v. Eyler*, 79 N.Y.2d 955, 956-57 (1992). In support of an argument that there is no such serious injury, a defendant may rely on the unsworn reports by the plaintiff's physicians, but evidence from its own physicians must be provided in the form of sworn affidavits or affirmations. *See Waldman v. Atlantic-Heydt*, No. 04-CV-2154 (SJ), 2006 WL 2010783, at * 3 (E.D.N.Y. July 14, 2006); *McGovern v. Walls*, 607 N.Y.S.2d 964 (2d Dep't 1994); *Looney v. Epervary*, 599 N.Y.S.2d 989, 989-90 (2d Dep't 1993); *Pagano v. Kingsbury*, 585 N.Y.S.2d 692 (2d Dep't 1992); *Morrone v. McJunkin*, No. 98-CV-2163, 1998 WL 872419, at *5-6 (S.D.N.Y. Dec. 15, 1998).

If the defendant satisfies this burden, the burden of production shifts to the plaintiff, who must come forward with sufficient evidence to permit a jury to conclude that the plaintiff sustained a serious injury within the meaning of the law. *Gaddy*, 79 N.Y.2d at 957. As mentioned, subjective complaints alone are insufficient to meet that burden. Like the defendant, the plaintiff is obligated to oppose the motion with "competent medical evidence based upon objective medical findings and diagnostic tests [that] support her claims." *Fountain v. Sullivan*, 690 N.Y.S.2d 341, 342 (3d Dep't 1999).

C.   *The Defendant's Prima Facie Case*

The defendant contends that (1) Singh failed to show that he suffered a "serious injury" within the meaning of N.Y. Ins. Law §5102(d), and (2) Singh failed to show that defendant caused the alleged serious injury.

7

In support of his motion, defendant submits a sworn medical report from orthopedist Dr. Edward S. Crane. Additionally, defendant relies on Singh's failure to answer or object to defendant's April 18, 2005 request for admission that no fracture was caused to any portion of Singh's leg as a result of the September 2002 accident; that there was no obvious gross deformity of his left leg as a result of the September 2002 accident; and that prior to the accident, Singh had "chronic non-union of the March 2002 left femur fracture." Def.'s Mem. Ex. F.

In light of Singh's failure to respond or object to defendant's request for admissions, the statements are deemed admitted under Fed. R. Civ. P. 36(a)(3). Accordingly, in his prima facie case, defendant need only contend that Singh cannot show (a) permanent loss or permanent consequential limitation of the use of a body organ; (b) significant limitation of use of a body function or system; or (c) a non-permanent medically determined injury that prevented him from performing substantially all of his usual material daily activities for at least 90 of the 180 days following the car accident.

Based on Crane's orthopedic evaluation of Singh on September 5, 2006, Crane concluded that the accident did not disrupt a "stable fribrous nonunion" as Rosen had diagnosed. He stated that "[w]ith a reasonable degree of medical certainty . . . the accident of 9/20/02 neither caused the nonunion of the left femoral shaft fracture, or exacerbated that pre-existing condition." Def.'s Mem. Ex. J. Furthermore, "[t]he surgery that was performed by Dr. Rosen was done because of a pre-existing condition, unrelated to the accident of 9/20/02." *Id*. Singh admitted this in failing to respond to defendant's request for admission. Def.'s Mem. Ex. F.

Crane was not provided with any of the records or x-rays from Singh's hospital visit in India, nor did he receive any records from Dr. Rosen. Also, on the advice of plaintiff's

counsel, who was present, Singh refused to answer basic questions about other operations he had undergone or other serious illnesses he had suffered. Dr. Rosen did, however, review the 2002 and 2003 x-rays of Singh's cervical spine, pelvis, left hip, femur and knee, as well as the January 26, 2003 MRI of his left knee. During his visit, Singh complained to Crane that he has pain in his left leg, neck and back (in the lower lumbar region). Crane's evaluation revealed normal[3] ranges of motion for Singh's left hip and left knee. Additionally, an examination of Singh's left knee revealed that it was normal except for the surgical scars. An x-ray from January 6, 2004 revealed that the fracture of his left femoral shaft was fully healed. Crane asserts that these results echo the Beth Israel Medical Center records, which reveal a full range of motion in the left leg.

With regard to complaints of lower back pain, Crane administered two tests to observe the lumbosacral flexion. First, he asked Singh to stand in an erect position, with his knees in full extension, and to bend forward at his waist as far as possible. Singh flexed slowly to 30º and stopped, complaining of severe pain. However, Crane then asked Singh to sit up on the examining table with his torso and trunk erect and his thighs and calves flat on the mattress. Singh sat comfortably for a minute and did not report any pain. I agree with defendant that this

---

[3] Singh argues that the defendant did not meet his prima facie case because Crane's report does not provide the degrees of various movements that are considered normal. Pl.'s Mem. in Opp. Summ. J. 3; *see Connors v. Flaherty*, 822 N.Y.S. 2d 555, 557 (2d Dep't 2006) (holding that defendants failed to meet their burden for the prima facie case because their affirmed medical reports did not compare the plaintiff's range of motion to what is considered normal). In his reply, however, defendant provided an addendum to the evaluation of the September 5, 2006 examination that states the normal ranges of motion. During the oral argument held on January 11, 2008, plaintiff objected to the use of the addendum because he had not been given an opportunity to respond to it. I therefore gave plaintiff an opportunity to do so. Plaintiff submitted a response in which he argued that I should not consider the addendum because it contained new arguments not in defendant's initial moving papers. Defendant, however, did not make new arguments in his reply brief; rather he merely submitted documentation of the normal ranges of motion so that Crane's report would conform to the evidentiary requirements of a serious injury suit. In light of the substance of the addendum and the opportunity plaintiff had to respond, I deny plaintiff's request to disregard the supplemental papers.

test revealed that Singh had feigned difficulty with flexion of his lumber spine, for Crane observed that Singh had painless lumbrosacral flexion to 90º, which is completely normal.

Finally, Singh appears to have feigned neck stiffness as well. When Crane asked Singh to move his head in various directions, Singh demonstrated a severely limited range and complained of pain. However, both prior to and after that examination, Singh "rapidly and easily turned his head far in excess of those limits," reaching 60º for lateral rotation and 30º for extension, which are normal ranges of motion for the cervical spine. Def.'s Mem. Ex. J.

The content of Dr. Crane's report together with Singh's admissions are sufficient to shift the burden to Singh.

D.   *Plaintiff's Prima Facie Case*

The defendant having met his initial burden, the burden shifts to Singh to establish a genuine issue of material fact requiring trial. To do so, Singh must submit competent and admissible medical evidence based on objective medical findings and diagnostic tests to support his claim. His experts must provide a basis for their conclusions by quantifying any loss or limitation, or otherwise demonstrating that it is meaningful. *Fountain*, 690 N.Y.S.2d at 341. Moreover, even if a plaintiff provides this objective evidence, "when additional contributory factors interrupt the chain of causation between the accident and claimed injury -- such as a gap in treatment, an intervening medical problem or a preexisting condition -- summary dismissal of the complaint may be appropriate." *Pommells v. Perez*, 4 N.Y.3d 566, 572 (2005).

1.  *Significant Limitation of Use of a Body Function or System*[4]

In opposition to the motion, Singh relies on the report of Dr. Rosen, an orthopedic surgeon who treated Singh from September 27, 2002 to December 12, 2007. Rosen's examination revealed the well-healed scars on Singh's upper thigh, but an x-ray showed a midshaft femur fracture demonstrating a pattern of nonunion.

Rosen states that to fix these problems, Singh underwent surgery on his left leg, resulting in the removal of the rod placed in his leg by the doctors in India, the implementation of a larger rod, and the removal of wires in the knee. Over the next few months, Rosen monitored Singh's recovery. An MRI taken on February 11, 2003 showed "some damage to the articular surface of the lateral tibial plateau." Pl.'s Ex. A. By 2004, his thigh was "completely improved," even though Singh told Rosen that he continued to have pain in the left knee. Rosen, however, does not quantify any loss as a result of injury to either the thigh or the knee. Nor has he characterized either injury as a significant or permanent limitation, or offered any evidence that they are the result of the September 2002 accident.

Singh must provide either "quantitative medical testimony that specifies the degree to which his range of motion has decreased," or "a qualitative medical assessment of his condition, that has an objective basis and that compares the plaintiff's limitations to the normal function, purpose and use of the affected body organ, member, function or system." *Decaze v. D & D Transp.*, No. 01-CV-6543 (DLI) (JMA), 2005 WL 2436222, at *4 (Sept. 30, 2005). Rosen's report does neither. Singh's subjective complaints are insufficient to prove serious injury, *see, e.g.*, *Toure v. O'Neal*, 98 N.Y.2d 345, 350 (2002) (holding that the plaintiff must

---

[4] Given that Singh fails to establish a significant limitation of use of a body function, I did not address the more onerous category of permanent loss or permanent consequential limitation of the use of a body organ or system.

present a medical report based on objective proof of an injury, not just subjective complaints of pain), and Rosen's "conclusory assertions based on those subjective complaints and tailored to meet statutory requirements," *Grossman,* 707 N.Y.S.2d 233 (2d Dep't 2000), are likewise insufficient.

To the extent that Rosen provides objective evidence of limitation on use in light of Singh's November 2002 leg surgery, such a limitation appears to be minor, given his subsequent quick recovery. "Minor, mild or slight limitation of use" is "insignificant" and does not constitute a "significant limitation of use of a body function or system" within the meaning of N.Y. Ins. Law § 5102(d). *Licari*, 57 N.Y.2d at 236. Rather, a "significant limitation" requires proof of "more than a minor limitation of use." *Id.* To establish such a showing, a medical affidavit specifying "the degree of restriction of movement suffered" and "the objective tests performed to determine such restriction of movement" is generally satisfactory. *Merisca v. Alford*, 663 N.Y.S.2d 853, 854 (2d Dep't 1997); *see also Parker v. Defontaine-Stratton*, 647 N.Y.S.2d 189, 190 (1st Dep't 1996) ("[A] medical affidavit which demonstrates that the plaintiff's limitations have been objectively measured or quantified is sufficient."). Rosen's declaration does not allege any restriction of movement.

Additionally, even if the medical report supported Singh's claim that use of his leg is significantly limited, it nonetheless fails to support a causal connection between the alleged leg pain and the September 2002 motor vehicle accident. That failure is an additional reason to grant defendant's motion for summary judgment. *See, e.g.*, *Howell v. Reupke*, 790 N.Y.S.2d 703, 704 (2d Dep't 2005) (granting summary judgment when plaintiff's medical submissions were insufficient to raise a triable issue of fact because plaintiff's physicians did not make a causal connection between the injury and the accident). Rosen acknowledged his inability to

determine whether the injuries were due to the accident at issue or to the one in India. Pl.'s Ex. A. It "*appear[ed]*" to Rosen that the September 2002 accident disrupted a stable fibrous non-union,[5] and he stated that displacement of the wires in the knee "*may* have also been affected by a second injury." *Id*. (emphasis added). But he further acknowledged that "without pre-injury x-rays," it would be "impossible to determine" what was caused by the second accident. *Id.* Rosen's report fails to establish a causal connection between the September 2002 accident and Singh's current problems.

Finally, at his deposition, Singh complained of neck and back pain. But he has not only failed to address whether these problems were caused by the accident in India or the one in the United States, he has also failed to present any objective medical evidence that would support a claim that his use of his neck or back was significantly or permanently limited. Rosen's declaration does not deal with these alleged injuries.

In sum, Singh has failed to raise a genuine issue of material fact requiring trial as to whether he suffered a significant limitation of the use of his neck, back or leg.

2. *Prevention from Performing Usual and Customary Daily Activities*

In order to raise a genuine issue of material fact as to whether Singh was prevented "from performing substantially all of the material acts which constitute[d] . . . [his] usual and customary daily activities" for 90 of the 180 days following the accident, N.Y. Ins. Law § 5102(d), Singh must demonstrate that his usual activities were curtailed "to a great extent rather than some slight curtailment." *Licari*, 57 N.Y.2d at 236. He has failed to do so.

---

[5] But Singh admitted that prior to the September 20, 2002 accident, plaintiff had chronic non-union of the March 2002 left femur fracture. Def.'s Ex. F.

Singh testified in his deposition that as a result of the accident he has lost wages and endured other financial problems. Because of the problems with his leg, he has been unable to pick up weighty items and unable to work. Singh Dep. 52. While he claims to have no trip logs or other documentary evidence that his work hours were reduced, he testified at one point that he did not work for two to three months after the surgery. *Id*. at 65. But he also testified at the same deposition that he went to work part-time right after the accident, driving three to six hours a day. Singh Dep. 41.[6]

Even if Singh had presented evidence sufficient to support a jury finding that he refrained from his usual and customary activities for the necessary time period, his claim would fail because he must also provide competent medical testimony that he was unable to engage in his usual and customary activities because of injuries sustained (or exacerbated by) the accident at issue. *See, e.g.*, *Jackson v. N.Y. City Transit. Auth.*, 708 N.Y.S.2d 469, 469 (2d Dep't 2000) ("[P]laintiff's self-serving affidavit stating that she was unable to return to work . . . , without a physician's affidavit substantiating the existence of a medically determined injury which caused the alleged limitation of her activities, was insufficient to create a triable issue of fact as to her inability to perform substantially all of her daily activities for not less than 90 of the first 180 days subsequent to the accident."); *see also Below v. Randall*, 658 N.Y.S.2d 767, 768 (3d Dep't 1997) ("Even were we to accept that plaintiff could not engage in certain activities and sports,

---

[6] This testimony was as follows:
>Q: The day after this accident did you go back to work as a taxi driver
>    . . .
>A: Yes, but very little
>Q: How many hours did you work?
>A: Four or five or six; three or four, five or six
>Q: Then did you work for the next three months as a taxi driver?
>    . . .
>A: Yes, but part-time.

*Id.* at 41.

14

there has been no showing that these restrictions were medically indicated . . . ."). The submitted medical reports are insufficient to meet that burden.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is granted.

So ordered.


John Gleeson, U.S.D.J.

Dated: February 6, 2008
      Brooklyn, New York